[Cite as *Lott v. Naylor*, 2017-Ohio-9267.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| GINA MARIE LOTT, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2017-02-029 |
| | : | O P I N I O N |
| - vs - | | 12/28/2017 |
| | : | |
| RANDOLPH JAMES NAYLOR, | : | |
| Defendant-Appellee. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR 14090892


Gina Marie Lott, 7610 Dover Court, West Chester, Ohio 45069, plaintiff-appellant, pro se

Frank J. Schiavone IV, 6 South Second Street, Suite 520, Hamilton, Ohio 45011, for defendant-appellee


**PIPER, J.**

{¶ 1} Plaintiff-appellant, Gina Lott ("Mother"), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, denying her motions to terminate visitation and access to medical records.

{¶ 2} Mother filed a motion to terminate defendant-appellee, Randolph Naylor's ("Father"), visitation with two children who were born issue of the parties' marriage, as well as

a motion to deny Father's access to the children's medical records. During the hearing on the matter, Mother played an audio recording during which Father and his new wife are heard speaking unkindly to the children.

{¶ 3} Mother also claimed that Father should not have access to the children's medical records because part of the records documented one child's visit to a medical facility due to the child's allegation that Father sexually abused her.

{¶ 4} The magistrate denied both of Mother's motions, finding that Mother had failed to prove that denying visitation or access to medical records was in the children's best interests. The magistrate noted that Mother had been found in contempt five times for failing to comply with various parenting orders, and that Mother agreed to the visitation schedule before it was previously adopted by the court. Mother filed objections to the magistrate's decision, and the trial court overruled each objection. Mother now appeals the trial court's decision, raising the following assignments of error. As the issues are interrelated, we will address both of Mother's assignments of error together.

{¶ 5} Assignment of Error No. 1:

{¶ 6} DOMESTIC RELATIONSHIP [SIC] COURT ERRED BY DENYING APPELLANT'S MOTION TO TERMINATE VISITATION RIGHTS.

{¶ 7} Assignment of Error No. 2:

{¶ 8} DOMESTIC RELATIONSHIP [SIC] COURT ERRED BY DENYING APPELLANT'S MOTION TO TERMINATE RIGHTS TO RECORDS.

{¶ 9} Mother argues in her two assignments of error that the trial court erred in denying her motions to terminate visitation and Father's access to medical records.

{¶ 10} Pursuant to R.C. 3109.051, a trial court is permitted to modify visitation rights if it determines that the modification is in the child's best interest. *In re McCaleb*, 12th Dist. Butler No. CA2003-01-012, 2003-Ohio-4333, ¶ 6. In determining whether a modification is in

the child's best interest, the court is guided by the enumerated factors listed in R.C. 3109.051(D).

{¶ 11} Those factors include,

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons * * *;

(2) The geographical location of the residence of each parent and the distance between those residences * * *;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, * * * the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(13) Whether the residential parent or one of the parents subject

- 3 -

to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶ 12} "The trial court has broad discretion in deciding matters regarding the visitation rights of nonresidential parents." *Shafor v. Shafor*, 12th Dist. Warren No. CA2008-01-015, 2009-Ohio-191, ¶ 7. Accordingly, while a trial court's decision regarding visitation time must be just, reasonable, and consistent with the best interest of the child, this court will not reverse the trial court's decision absent an abuse of discretion. *Wilson v. Redmond*, 12th Dist. Madison No. CA2003-09-033, 2004-Ohio-3910, ¶ 9. An abuse of discretion is more than an error of law; it implies the trial court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶ 13} According to R.C. 3109.051(H), a nonresidential parent is entitled to access, "under the same terms and conditions under which access is provided to the residential parent, to any record that is related to the child and to which the residential parent of the child legally is provided access" unless the court determines that granting such access is not in the child's best interests.

{¶ 14} During the hearing on Mother's motions, Mother presented testimony and asserted that Father should no longer have visitation with the children and should not be entitled to access their medical records. Mother argued that the children do not want to spend time with Father, that Father mistreats the children, and that Father used the medical records to ridicule one child for making allegations that Father had sexually abused her.

{¶ 15} However, the magistrate noted that Mother initially agreed to the visitation schedule and that Mother had presented many of the same arguments in past hearings. The magistrate stated that the "vast majority of [Mother's] current case-in-chief is nothing more than a reiteration and rehashing of issues she has raised, unsuccessfully, in the past." The magistrate determined that Mother's motives in agreeing to a visitation schedule and then arguing against it thereafter was "disingenuous."

{¶ 16} Regarding the other factors for consideration, the magistrate found that the incident for which a tape recording existed was not Father or the children's "finest hour."[1] Father testified that the conversation occurred because he wanted to have a "frank" discussion with the children regarding their relationship and how Mother was, in his opinion, interfering with his relationship with the children. The magistrate determined that it was "unable to extrapolate from this admittedly unfortunate incident a finding that it is in these children's best interest to effectively excise [Father] from their lives and they from his."

{¶ 17} The magistrate also took into consideration that Mother had denied Father visitation in the past and had been held in contempt five times for her refusal to obey court orders. Father testified regarding the instances where Mother interfered with visitation and concluded, "I miss my kids."

{¶ 18} Regarding the medical records, the magistrate found that Father's discussion of information contained in the medical records was not enough for Mother to carry her burden to prove that denial of Father's access to his children's medical records was in the children's best interests. The record indicates that Father disagreed with information contained in one child's medical records regarding statements pertaining to sexual abuse. However, simply

---

1. For example, Father's new wife addressed one child's speech impediment and said to the child, "I mean, you're 13. You talk like you're four." Father told the child that the speech impediment would be "embarrassing when you're 20 years old. * * * [Mother] thinks your [sic] fine, but you're not."

because Father expressed his disagreement with the medical records does not demonstrate that Father should be denied access to records pertaining to his children when the controlling statute clearly permits equal access unless it is not in the child's best interest.

{¶ 19} Father testified that his goal in discussing the medical records was to "clear the air" and discuss the allegations directly. Father also testified that he wanted to "keep an eye" on his children's health because he loves them and wanted to know issues regarding the children, such as the state of their mental health.

{¶ 20} We have previously noted the broad discretion accorded a trial court's determinations in cases such as this. The trial court's reasoning is not arbitrary, unreasonable, or capricious. After reviewing the record, we find the trial court did not abuse its discretion in denying Mother's motions for termination of visitation and denial of access to medical records. Mother's two assignments of error are, therefore, overruled.

{¶ 21} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.