[Cite as *Lykins v. Lykins*, 2018-Ohio-2144.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| SUSANA E. LYKINS, | : | |
| Appellee/Cross-Appellant, | : | CASE NOS. CA2017-06-028 |
| | | CA2017-06-032 |
| | : | |
| - vs - | | O P I N I O N |
| | : | 6/4/2018 |
| DONALD H. LYKINS, | : | |
| Appellant/Cross-Appellee. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2015DR00621

Heyman Law, LLC, D. Andrew Heyman, 1212 Sycamore Street, Suite 36, Cincinnati, OH 45202, for appellee/cross-appellant

The Farrish Law Firm, Michaela M. Stagnaro, 810 Sycamore Street, 6th Floor, Cincinnati, OH 45202, for appellant/cross-appellee

**S. POWELL, P.J.**

{¶ 1} Appellant/cross-appellee, Donald H. Lykins ("Husband"), and appellee/cross-appellant, Susana E. Lykins ("Wife"), appeal from a final decree of divorce issued by the Clermont County Court of Common Pleas, Domestic Relations Division, in this highly

contentious divorce.[1]  For the reasons outlined below, we affirm in part, reverse in part, and remand this matter to the trial court for a redetermination of Husband's child support obligation.

{¶ 2}  Husband and Wife were married on August 31, 1996 in Cincinnati, Ohio.  The couple have two children born issue of the marriage; specifically, two daughters, Emma and Lilly, born on November 28, 2004 and September 6, 2006, respectively.  On June 2, 2015, after being married for nearly 19 years, Wife, who is Peruvian and speaks Spanish as her native language, filed a complaint for divorce.  In support of her complaint, Wife alleged Husband was guilty of gross neglect of duty and extreme cruelty, thereby rendering her and Husband incompatible as marriage partners.  Two weeks later, on June 16, 2015, Husband filed his answer denying Wife's allegations.  The trial court thereafter issued a number of temporary orders regarding the children, generally referred to as a "nesting plan" in that the children remained in the marital residence with Husband and Wife exercising their parenting time with the children in the home.  The trial court also appointed the children with a guardian ad litem.

{¶ 3}  After numerous pre-trial motions were decided, including seemingly endless competing motions for contempt, an initial hearing on Wife's complaint for divorce was held on January 23 through 25, 2017, with a final hearing scheduled to take place on May 5, 2017.  At this initial hearing, the trial court heard lengthy testimony from numerous witnesses regarding the grounds for divorce, allocation of parental rights, and division of property, including testimony from both Husband and Wife, as well as the guardian ad litem.

{¶ 4}  At the conclusion of this hearing, the trial court issued a judgment entry finding

---

1. As an example of the contentious nature of these proceedings, the trial court docket sheet spans a total of 51 pages with 489 entries.

Husband and Wife were incompatible as marriage partners, thus granting Wife's complaint for divorce. The trial court then designated Wife as the children's sole residential parent, with Husband granted parenting time with the children on alternate weekends from 6:00 p.m. on Friday evening until Monday morning when the children go to school, as well as on Thursday from 6:00 p.m. until 8:00 p.m. The trial court's decision to grant Husband parenting time, however, was based "upon the condition that he undergo treatment for anger management and mental health issues," which Husband was to confirm in writing. As the trial court noted, this decision was "pretty clear" based on the testimony and evidence presented, including Husband's "very clear" anger issues.[2]

{¶ 5} On February 3, 2017, the trial court issued a 23-page decision expounding upon its prior judgment entry designating Wife as the children's sole residential parent. As part of this decision, the trial court summarized the relevant testimony and determined that a shared parenting plan was not in the best interest of the children given the history of conflict between Husband and Wife, as well as Husband's demeanor throughout the lengthy divorce proceedings.[3] Specifically, as the trial court found, and which the record confirms,

---

2. Husband's anger issues are apparent throughout the entire record, which includes testimony and evidence regarding an incident where Husband was outraged when the police refused to arrest him when he would not leave the marital home during Wife's parenting time. The children witnessed this incident, as well as an incident in the courthouse parking lot where Husband made derogatory comments to the officer on duty after the officer observed Husband pull into the parking lot at a high rate of speed honking his horn at a group of people standing nearby. These comments included telling the children "don't ever trust cops," "this is why cops are hated," and "cops kill people and get arrested." During this incident it is undisputed that the children were upset, crying, and as the police report notes, "begging [Husband] to stop his yelling." Although acknowledging that he made those comments to the children, Husband claims the officer's report regarding this incident was "falsified," "very similar to malicious prosecution," and a clear case of harassment in that it was the officer on duty who was provoking him "to hit" him.

3. The record indicates Husband unnecessarily interrupted the trial court proceedings, at one point claiming Wife's trial counsel was "harassing" his mother in questioning her on cross-examination after Husband called her to testify regarding his interactions with the children. As Husband stated, "he's not going to harass my mother or I'm leaving." Husband further chided his trial counsel by ordering him to "object or I'm walking out of here." The trial court found nothing inappropriate about Wife's trial counsel's questioning stating, "he's not being rude or anything." We agree with the trial court's assessment. The trial court then informed Husband that he would be found in contempt if he continued to interrupt the proceedings. Almost immediately thereafter, Husband again unnecessarily interrupted the proceedings claiming Wife's trial counsel was

Husband "disparaged law enforcement officers, mental health providers, the Guardian ad Litem and the judge in front of the children." The trial court then reiterated its finding that it was in the children's best interest that Wife be designated sole residential parent due to numerous factors, including Husband's anger management issues and narcissistic personality, as well as the "overwhelming" evidence that Wife was more likely to honor and facilitate court ordered parenting time.[4]

{¶ 6} On April 28, 2017, the trial court issued a 36-page decision regarding contested property issues, the allocation of debt and expenses, child support, spousal support, and income. As relevant here, the trial court found it necessary to impute $38,682 in income to Husband resulting from the parties' rental properties Husband received as part of their stipulated partial property settlement. The trial court reached this figure by reducing Husband's $58,000 in imputed gross annual rental income by $19,318, the amount Husband would spend on normal and expected expenses for the rental business based on the record properly before the trial court. The trial court, however, did not impute any income to Wife, an attorney licensed in both Ohio and Indiana, upon finding Wife made

---

"harassing" his mother by asking her the "same question three times." Trying to calm her son down, Husband's mother stated "[h]e's not harassing me" and "I don't feel harassed." Unpersuaded, Husband got up from his seat and threatened to leave the courtroom, which prompted the trial court to inform Husband that the proceedings would continue with or without Husband present. The trial court further informed Husband that "we're not going to have any more of these temper tantrums. You're acting like a five year old." Eventually regaining his composure, Husband sat back down in his seat and the proceedings continued without any further interruptions from Husband.

4. Although the record indicates that the children are smart, well-adjusted children, the trial court noted that Husband had exhibited narcissistic tendencies given his testimony that he was the only person who could "fix" the children. Specifically, Husband testified that "[Wife] knows I have the ability to fix these kids from their emotional strain but she continues to fight with me at court that the kids need less time with their father[.]" Husband also testified in regards to his involvement with the children at school that he is "the most active person that ever walked in that building[.]" In addition, when asked about outdoor activities with the children, Husband testified that he built them "a fuckin' tree house" that was "a fabulous tree house, only one like it in the whole neighborhood, nobody's got a tree house like that, I had it built, I designed it and I had it constructed." Husband further testified that instead of allowing the children to join a team to play soccer or lacrosse that "[he] would teach them the skills to do that" and that "[he] would play with them[.]" When confronted about his narcissism by the trial court, Husband agreed and stated "[g]uilty."

"bona fide good faith efforts to obtain employment at a higher rate of pay." As the court found, Wife "has found the best position possible" given the current job market for an attorney with Wife's skill set practicing in creditor's rights.

{¶ 7} Continuing, as it relates to the rental properties, the trial court found the "retro appraisal methodology" used by Husband's expert witness, Robert Binger, "appropriate for the appraisal industry and for purposes of establishing fair market values at the time near the date of the marriage in 1996, October or November 1996." However, as it relates to the fair market value of those same properties as of March 1, 2016, the trial court determined Wife's expert witness, Martin Rueve, "provided a fair market appraisal of the properties which the Court finds was appropriate for purposes of the appraisal industry and purposes of this case." Therefore, based on those figures adopted by the trial court, the change in fair market value for those rental properties were as follows:

| Property | 1996 Value | 2016 Value | Increase/Decrease |
|---|---|---|---|
| 2875 Millbank Road | $69,000 | $90,000 | $21,000 |
| 8413 Reading Road | $95,000 | $45,000 | ($50,000) |
| 8415 Reading Road | $90,000 | $39,000 | ($51,000) |
| 8424 Reading Road | $125,000 | $150,000 | $25,000 |
| | | | |
| Total | $379,000 | $324,000 | ($55,000) |

{¶ 8} As for who managed these properties, the trial court found Husband actively managed the rental properties both before and after his marriage to Wife, thereby finding Husband's testimony that some other person managed the properties not credible. As it relates to the net income from these rental properties, the trial court found "the **net** income from the four rentals was marital income due to being placed in the joint bank account, but the reduction of the mortgage balances in the properties is not marital property." In so holding, the trial court found that it would be inequitable "to find that the reduction in equity of [Husband's] separate property should be found to be marital property, particularly in light

of the fact that the overall fair market value of the properties depreciated by $55,000 during the marriage."

{¶ 9} As it relates to spousal support, the trial court found that for purposes of spousal support determination, Husband had an annual income of just under $134,000, whereas Wife had an annual income of $75,000, a difference of nearly $60,000. The trial court also determined that after an equitable division of all assets and the deduction of liabilities, Husband had a net worth of over $1,000,000, which was almost $400,000 more than that of Wife. The trial court, therefore, found it equitable to award Wife spousal support in the amount of $75,000. The trial court based its decision on the fact that the parties had been married for nearly 19 years at the time Wife filed for divorce, that Wife owed Husband over $115,000 for his interest in the marital residence, that Husband was receiving nearly $80,000 more in assets than Wife, that Husband "has approximately 30% more in annual income than [Wife]," and that Wife had been designated as the residential parent of the parties' two minor children, who at that time were ages ten and twelve. As for how that spousal support was to be paid, the trial court awarded Wife "an additional $75,000 as spousal support in the parties' marital residence," which was to be deducted from the amount Wife owed Husband for his interest in the marital home.

{¶ 10} As for child support, the trial court determined that Husband would pay spousal support, the amount of which would be determined following the final hearing scheduled on May 5, 2017 after accepting additional testimony and evidence on Wife's then current income. The trial court also found it necessary to accept additional testimony and evidence regarding Wife's request for attorney fees, as well as Husband's parenting time based on "what has occurred since the Court announced and filed the [judgment entry] on allocation of parental rights" on January 25, 2017.

{¶ 11} On May 5, 2017, the trial court conducted its previously scheduled final hearing, during which the trial court accepted additional testimony and evidence from both Husband and Wife.[5] Following this hearing, on May 16, 2017, the trial court issued a decision finding Wife's income was then currently $76,500 "after the firm granted all employees a 2% raise," thereby denying Husband's request to impute Wife with an income of at least $105,000. The trial court also found it necessary to reduce the amount of gross annual income Husband received from the rental properties by $7,200 since Husband testified he was now living in one of the rental properties that had previously been rented at $600 per month, thus reducing Husband's imputed income he received from those properties to $31,482.

{¶ 12} In regards to the trial court's award of spousal support, the trial court decided that it was necessary to reconsider its prior decision and modify its $75,000 spousal support award. To that end, the trial court instead ordered Husband to pay Wife spousal support in the amount of $600 per month (or $7,200 annually) for a period of seven years (for a total of $50,400), or until Wife remarries or establishes cohabitation with another person, whichever occurs first. As for the trial court's award of child support, since Wife would provide for the children's health insurance, the trial court ordered Husband to pay approximately $1,800 per month in child support (or nearly $21,600 annually). The record, however, indicates the trial court came to this figure without first deducting Husband's annual spousal support obligation from his income on the child support computation worksheet, nor did the trial court include Wife's annual spousal support award as part of her income on that same child support computation worksheet.

---

5. Husband appeared pro se at the final hearing after his trial counsel withdrew his representation on February 28, 2017 noting "the difficulty in communicating" with Husband.

{¶ 13} Moreover, as it relates Wife's request for Husband to pay her attorney fees, the trial court ordered Husband to pay $10,000 of Wife's incurred attorney fees, which at that time totaled more than $53,000. In reaching this decision, the trial court determined that Husband, who consulted with at least six attorneys during the pendency of this matter, but otherwise appeared pro se during a majority of these proceedings, "fail[ed] to comply with discovery requests, filed improper discovery requests and filed numerous repetitive or unnecessary motions that caused [Wife] to incur an extraordinary amount of attorney fees in this case." Further explaining its decision to award Wife with $10,000 in attorney fees, the trial court found Husband had filed numerous frivolous motions "such as a motion to limit the guardian ad litem's activities in the case and repeated motions to reconsider or modify temporary orders" when he had been explicitly informed that the final determination of those matters would be made after all the necessary hearings had been completed.

{¶ 14} The trial court also found Husband had refused to provide Wife with a detailed accounting of the rental properties, "such as leases for the units, actual rental receipt records, receipts for alleged cash expenditures and for credit card entries that he claimed were for the rentals." According to the trial court, Husband's failure to provide such documentation required both Wife's trial counsel and the trial court to review the extensive records submitted in this case and "extrapolate or impute the rental income" to Husband, a daunting task that took many hours to complete. Or, as Wife's trial counsel stated, this required him to "go to extenuating circumstances to get the information as best as he could" despite the trial court ordering Husband to provide Wife the requested documentation.

{¶ 15} Furthermore, as it relates to Husband's demeanor throughout the pendency of this case, the trial court found:

> [Husband's] demeanor throughout this case has been one of

- 8 -

disparaging [Wife],[6] her counsel,[7] the magistrate and judges, even the entire Domestic Relations Court staff in his motions for a change of venue, to reconsider, to modify and in his testimony.[8] [Husband] contacted [Wife's] counsel even while he was represented and sent him emails threatening to sue him for any fees incurred by [Husband] if he did. He and his counsel of record filed motions that were duplicative. By the Court's calculation, [Husband] filed eight motions seeking to modify the original temporary orders filed on July 29, 2015 or other orders that were filed in response to those motions. Several motions to "reconsider" prior rulings were filed. Clearly, his actions have made this case far more complicated and time consuming than it should have been and has caused [Wife] to incur additional attorney fees as well as causing additional court costs.

{¶ 16} Finally, in regards to Husband's parenting time, the trial court determined that Husband's parenting time would generally remain the same as outlined in its January 25, 2017 judgment entry allocating parental rights and responsibilities, except now that if either of the children have sports practice on Thursday evenings, Husband shall now be permitted to have the children on another weekday evening. In so holding, the trial court noted that since issuing that judgment entry, Husband had spent less time with the children than what was originally allocated by the trial court, that he had not communicated as frequently with the children, that he had not yet moved into his new residence, and that he had not attended most of the children's sporting events.

{¶ 17} On May 23, 2017, the trial court issued its final decree of divorce. Husband

---

6. The record indicates Husband's hostility towards Wife started during their marriage as evidenced by Wife's testimony that Husband would often become angry and call her derogatory names such as "spic and other derogatory names for a woman like bitch, stupid bitch."

7. Husband's distain for Wife's trial counsel is clear from the record. This includes Husband testifying that Wife's trial counsel was her "nasty attorney." Husband also referred to Wife's trial counsel as "inept." Although not specific in what derogatory terms he used, Husband readily admits that he spoke to Wife's trial counsel in a derogatory manner when attempting to negotiate a settlement agreement.

8. Husband's demeanor towards his own trial counsel was also suspect. This includes Husband commenting on the record his dissatisfaction with his counsel's performance claiming he was "as bad" if not "[w]orse" than Wife's trial counsel, comments that his then trial counsel responded by stating "Sweet. Fire me, I'll go home." As previously noted in fn. 5, Husband's trial counsel withdrew his representation of Husband on February 28, 2017 noting "the difficulty in communicating" with Husband.

and Wife now both appeal from that decree, collectively raising five assignments of error for review.

{¶ 18} Husband's Assignment of Error No. 1:

{¶ 19} THE TRIAL COURT ERRED AS A MATTER OF LAW IN ALLOCATING PARENTAL RIGHTS AND RESPONSIBILITIES AS IT WAS NOT IN THE BEST INTEREST OF THE CHILDREN.

{¶ 20} In his first assignment of error, Husband argues the trial court erred by designating Wife as the children's sole residential parent rather than ordering shared parenting. Husband also argues the trial court erred by awarding him less than equal parenting time with the children. We disagree.

**Wife Designated Children's Sole Residential Parent**

{¶ 21} R.C. 3109.04 governs the award of parental rights and responsibilities. In making this determination, the primary concern is the best interest of the children. *Albrecht v. Albrecht*, 12th Dist. Butler Nos. CA2014-12-240 and CA2014-12-245, 2015-Ohio-4916, ¶ 22. In order to determine the best interests of the children, R.C. 3109.04(F)(1) requires the trial court to consider all relevant factors. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 8. These factors include, but are not limited to: (1) the wishes of the parents, (2) the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest, (3) the child's adjustment to home, school, and community, (4) the mental and physical health of all persons involved, and (5) the likelihood that the caregiver would honor and facilitate visitation and parenting time. *Denier v. Carnes-Denier*, 12th Dist. Warren No. CA2015-11-106, 2016-Ohio-4998, ¶ 14. "[N]o single factor is determinative of the best interest of a child; rather, the determination should be made in light of the totality of the circumstances."

- 10 -

*Suess v. Suess*, 12th Dist. Warren Nos. CA96-01-006 and CA96-01-008, 1996 Ohio App. LEXIS 4400, *6 (Oct. 7, 1996).

{¶ 22} With regard to whether shared parenting is in the child's best interest, the trial court must consider the additional factors set forth in R.C. 3109.04(F)(2). *Adkins v. Adkins*, 12th Dist. Butler No. CA2016-12-227, 2017-Ohio-8636, ¶ 11. These factors include (1) the ability of the parents to cooperate and make decisions jointly, (2) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent, (3) any history or potential for abuse, (4) the geographic proximity of the parents to one another, (5) and the recommendation of the guardian ad litem. R.C. 3109.04(F)(2)(a) thru (e). "While no factor in R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting." *Seng v. Seng*, 12th Dist. Clermont No. CA2007-12-120, 2008-Ohio-6758, ¶ 21.

{¶ 23} An appellate court reviews a trial court's custody determination for an abuse of discretion. *In re S.K.*, 12th Dist. Butler No. CA2013-06-108, 2014-Ohio-563, ¶ 12. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion that a trial court enjoys in custody matters "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re J.M.*, 12th Dist. Warren No. CA2008-12-148, 2009-Ohio-4824, ¶ 17, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "[A]n appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility." *In re D.R.*, 12th Dist. Butler Nos. CA2005-06-150 and CA2005-06-151, 2006-Ohio-340, ¶ 12.

{¶ 24} As noted above, Husband argues the trial court erred by designating Wife as

the children's sole residential parent. Instead, Husband argues the trial court should have ordered shared parenting. However, after a full and thorough review of the record, we find no error in the trial court's decision. In so holding, we specifically reject Husband's claim that "it is apparent" the trial court did not consider all of the factors listed under R.C. 3109.04(F)(1) and (2) in finding it was in the children's best interest to designate Wife as the children's sole residential parent. The trial court issued a lengthy 23-page decision outlining in great detail its findings of fact and conclusions of law. This included a summary of its in camera interview with the children, who the trial court found were "very bright young ladies," and the relevant testimony presented, including that of both Husband and Wife. Husband's claim the trial court somehow failed to consider all relevant factors listed under R.C. 3109.04(F)(1) and (2) is simply incorrect.

{¶ 25} It is clear that Husband vehemently disagrees with the trial court's decision to designate Wife as the children's sole residential parent. Yet, other than highlighting the testimony indicating he was a loving, affectionate, and engaged parent that was actively involved in the children's lives, including the children's activities in their school's drama, chess, and robotics clubs, Husband has failed to demonstrate how the trial court abused its discretion in issuing such a decision. This is because, as noted above, the discretion that a trial court enjoys in custody matters "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re J.M.*, 2009-Ohio-4824 at ¶ 17, quoting *Miller*, 37 Ohio St.3d at 74.

{¶ 26} Husband believes the trial court's decision to designate Wife as sole residential parent was meant to "punish" him for his "strong personality." Nothing in the record supports such a claim. Rather, as the trial court specifically stated, "I think you're a

- 12 -

very strong personality; *that's not a bad thing*; I think I am, I think most lawyers probably are, at least litigators." (Emphasis added.) The same is true regarding the trial court's reference to Husband's anger issues, which, as a simple review of the record reveals, was based on Husband's actions alone, not some preconceived bias of the trial court. As the trial court stated, "[a]t some point in your life you'll need to look at yourself in the mirror and say, you know, if everyone else is saying it to me it might be me. And it is." We agree.

{¶ 27} There is also nothing in the record to support Husband's claim that the guardian ad litem "hates" him and was biased against him. This is true despite Husband's unbecoming, aggressive behavior directed at the guardian ad litem throughout the pendency of this matter.[9] Nor is there any evidence to indicate the guardian ad litem's recommendation to designate Wife as the children's sole residential parent was based on her "lack of experience in handling family law and GAL matters" as Husband now suggests. This is particularly true here considering the guardian ad litem has served in that capacity for over five years.

{¶ 28} Again, after a full and thorough review of the record, we find the trial court's decision to designate Wife as the children's sole residential parent was not an abuse of discretion. This includes, as the trial court found, "overwhelming" evidence that Wife was more likely to honor and facilitate court ordered parenting time. As Wife testified:

> [WIFE'S TRIAL COUNSEL]: And you have all intentions of honoring any court order with regard to parenting time for either you or [Husband]?

---

9. As the guardian ad litem testified, the first time she spoke with Husband, Husband cursed at her and questioned whether she "would be biased because I'm a female." The guardian ad litem further testified that Husband threatened her and called her "worthless" based on his unfounded belief that she was not advocating for the best interest of the children. Husband acknowledged that he cursed at the guardian ad litem during their "heated" conversation, but testified that he was "[n]ot ashamed of that." Husband also acknowledged the fact that he told the children that the guardian ad litem was a "witch" who was going to take them away from him so "you need to watch what you say to her," as well as the fact that he had refused the guardian ad litem access to the children.

[WIFE]: Yes.

[WIFE'S TRIAL COUNSEL]: So you have an expectation that [Husband] would follow all court orders, do you believe that he would?

[WIFE]: If history has anything to say I'm sure that if he doesn't agree with the court order he will defy it, he will most certainly defy it, I don't expect him to follow a court order that he doesn't agree with.

[WIFE'S TRIAL COUNSEL]: And that's based on just innuendo or past examples of that?

[WIFE]: No, the past examples, you know, the temporary orders with respect to occupancy, the temporary orders with respect to covering certain bills, yeah, no, the Court's order specifically not to talk to the girls about what happened in chambers.

Wife also testified, "I have always and I will always check with [Husband] when it has anything to do with the girls, I will always get his input because they're both our girls. It's just that I don't get the same courtesy from him." We agree with the trial court's findings for the record fully supports Wife's testimony.

{¶ 29} In reaching this decision, we find it appropriate to further note that there is nothing in the record to support Husband's claims that Wife is an alcoholic who is "addicted to the internet" as Husband alleged during the initial hearing before the trial court. We also reject Husband's claim that Wife should shoulder all the blame for their current situation and that of their children, both of whom the record indicates have faced some difficulty during these highly contentious divorce proceedings. As the trial court found, Husband's reaction to any perceived slight was to "blame [Wife] instead of thinking about what was good for the child." The best interest of the children should take priority over all else. Therefore, finding no error in the trial court's decision, a decision we note comports with the guardian ad litem's recommendation, Husband's argument that the trial court abused its discretion in designating Wife as the children's sole residential parent rather than ordering shared

parenting lacks merit.

**Husband's Parenting Time**

{¶ 30} Just as with the trial court's decision regarding the award of parental rights and responsibilities, in determining parenting time for a nonresidential parent, the primary concern is the best interest of the children. *Carr v. Carr*, 12th Dist. Warren Nos. CA2015-02-015 and CA2015-03-020, 2016-Ohio-6986, ¶ 47. "In establishing a specific parenting time schedule, a trial court is required to consider the factors set forth in R.C. 3109.051(D)." *Anderson v. Anderson*, 12th Dist. Warren No. CA2009-03-033, 2009-Ohio-5636, ¶ 24. Similar to the best interest factors as listed in R.C. 3109.04(F)(1), these factors include, but are not limited to, (1) the children's interaction and interrelationship with their parents, (2) the geographical location and distance between the parents' respective homes, (3) the children and parents' available time, including each parent's employment schedule, (4) the age of the children, (5) the children's adjustment to their home, (6) the health and safety of the children, (7) the mental and physical health of all the parties, (8) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights, and (9) "any other factor in the best interest of the child[ren]." R.C. 3109.051(D).

{¶ 31} "The trial court has broad discretion in deciding matters regarding the visitation rights of nonresidential parents." *Shafor v. Shafor*, 12th Dist. Warren No. CA2008-01-015, 2009-Ohio-191, ¶ 7. Therefore, while a trial court's decision regarding visitation time must be just, reasonable, and consistent with the best interest of the child, this court will not reverse the trial court's decision absent an abuse of discretion. *Lott v. Naylor*, 12th Dist. Butler No. CA2017-02-029, 2017-Ohio-9267, ¶ 12, citing *Wilson v. Redmond*, 12th Dist. Madison No. CA2003-09-033, 2004-Ohio-3910, ¶ 9. As noted above, an abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable.

*In re B.K.*, 2011-Ohio-4470 at ¶ 12, citing *Blakemore*, 5 Ohio St.3d at 219.

{¶ 32} Husband argues the trial court erred by awarding him with less than equal parenting time with the children. In support, Husband initially argues the trial court failed to make any findings concerning the factors set forth in R.C. 3109.051(D) and otherwise ignored the testimony that he had a loving relationship with the children and played an integral part in their lives. However, although not explicit in its findings, it is clear the trial court met its statutory duty by considering the relevant factors set forth in R.C. 3109.051(D), many of which we note directly overlap with those factors found in R.C. 3109.04(F)(1) regarding the best interests of the children. Moreover, while it may be true that the children expressed their desire to spend time with Husband, even equal time, both children also stated that Husband had urged them to tell the trial court they wanted equal time with him during their in camera interviews. This was in direct conflict with the trial court's previous orders instructing Husband not to discuss the children's upcoming in camera interviews with them.

{¶ 33} Although the record is clear that the children love Husband and enjoy spending time with him, the trial court's decision awarding Husband with less than equal parenting time with the children was not an abuse of discretion, a decision that we again note comports with the guardian ad litem's recommendation. Husband argues the trial court's decision "unreasonably" limits his ability to be actively involved in the children's academics and extracurricular activities. We find this argument disingenuous considering the fact that, during the May 5, 2017 final hearing, Husband specifically stated that he "can't afford to take the kids on weekends because [he] can't afford to feed them." Husband cannot have it both ways.

{¶ 34} Moreover, as the trial court found as part of its May 16, 2017 decision outlining

Husband's parenting time, Husband had spent less time with the children than what was allocated by the trial, that he had not communicated as frequently with the children, that he had not yet moved into his new residence, and that he had not attended most of the children's sporting events in the months after the trial court issued its judgment entry allocating parental rights and responsibilities on January 25, 2017. The record fully supports the trial court's finding. As Wife testified, "when he did move out [of the marital residence] he just checked out, he does not talk to the girls on the phone, he doesn't answer the phone when they call, he doesn't return their voice mails. I created a timeline of the times that he has seen them, he has only seen them three times."

{¶ 35} In reaching this decision, we again reject Husband's claim that the trial court "appear[s] to punish him for what it perceived as his behavior [.]" As noted above, nothing in the record supports such a claim. There is also nothing to support Husband's claim that the trial court judge is "a biased judge," a claim Husband admitted to saying to his children prior to their in camera interviews. Rather, as the trial court stated during the initial hearing in this matter, "I don't take offense to you calling me biased, if you hadn't I'd have been shocked because you've called everybody biased in this, *but that's got nothing to do with my ruling.*" (Emphasis sic.)

{¶ 36} Finding no error in the trial court's decision, Husband's argument that the trial court abused its discretion by awarding him with less than equal parenting time lacks merit. If Husband, who has an annual salary of $95,000 per year, truly believes that his parenting time with his children would merely consist of "sit[ting] at home all day and eating baloney sandwiches" as he stated during the May 5, 2017 final hearing, Husband should not now be arguing the trial court's decision to award him with less than equal parenting time constitutes an abuse of discretion. Parenting is not about how much money you can spend,

or are willing to spend, to entertain your children.  Accordingly, having found no merit to either claim raised by Husband herein challenging the trial court's decision allocating Husband and Wife's parental rights and responsibilities, Husband's first assignment of error is overruled.

{¶ 37} Husband's Assignment of Error No. 2:

{¶ 38} THE TRIAL COURT ERRED AS A MATTER OF LAW BY AWARDING SPOUSAL SUPPORT TO WIFE.

{¶ 39} In his second assignment of error, Husband argues the trial court erred by awarding Wife $600 in monthly spousal support.  We find no merit to Husband's claim.

{¶ 40} Pursuant to R.C. 3105.18(B), in a divorce proceeding, the trial court may award reasonable spousal support.  In determining whether spousal support is appropriate and reasonable, the trial court has a statutory duty to base its spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1).  *Kedanis v. Kedanis*, 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533, ¶ 10.  According to R.C. 3105.18(C)(1), the trial court shall consider all statutory factors, such as the income of the parties, the relative earning abilities of the parties, the ages and physical, mental, and emotional conditions of the parties, the duration of marriage, the standard of living of the parties established during the marriage, the relative extent of education of parties, and the relative assets and liabilities of the parties, among others.  *McCarty v. McCarty*, 12th Dist. Warren Nos. CA2016-07-055 and CA2016-07-056, 2017-Ohio-5852, ¶ 16-17.  A reviewing court will presume each factor was considered, absent evidence to the contrary.  *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 42.

{¶ 41} A trial court has broad discretion in determining spousal support awards.

*Hutchinson v. Hutchinson*, 12th Dist. Clermont No. CA2009-03-018, 2010-Ohio-597, ¶ 16. Therefore, this court will not disturb a spousal support award on appeal absent an abuse of discretion. *Bixler v. Bixler*, 12th Dist. Clermont No. CA2016-12-081, 2017-Ohio-7022, ¶ 15. Again, as noted above, an abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *In re B.K.*, 2011-Ohio-4470 at ¶ 12, citing *Blakemore*, 5 Ohio St.3d at 219.

### No Imputed Income to Wife

**{¶ 42}** Husband initially argues the trial court erred by not imputing additional income to Wife in considering its award of spousal support because she was voluntarily underemployed. We disagree.

**{¶ 43}** In determining an award of spousal support, the trial court must determine both parties' annual income. *Marron v. Marron*, 12th Dist. Warren Nos. CA2013-11-109 and CA2013-11-113, 2014-Ohio-2121, ¶ 44. The statutory section on spousal support, R.C. 3105.18, does not expressly address imputing income to a spouse who is voluntarily unemployed or underemployed. *Id.* "However, this court and others have approved a trial court's imputation of income for purposes of determining spousal support." *Justice v. Justice*, 12th Dist. Warren No. CA2006-11-134, 2007-Ohio-5186, ¶ 17. Therefore, in fashioning a spousal support award, the trial court "may impute income to a party who is voluntarily unemployed, voluntarily underemployed, or otherwise not working up to his or her full earning potential." *Moore v. Moore*, 12th Dist. Clermont No. CA2006-09-066, 2007-Ohio-4355, ¶ 66.

**{¶ 44}** As with other spousal support determinations, findings of whether a party is voluntarily underemployed, and the amount of income that should be imputed, if any, are factual determinations to be made by the trial court based on the circumstances of each

particular case. *Schenck v. Schenck*, 12th Dist. Butler No. CA2012-08-150, 2013-Ohio-991, ¶ 17. The decision to impute income for purposes of spousal support is within the discretion of the trial court and shall not be overruled absent an abuse of that discretion. *Corwin v. Corwin*, 12th Dist. Warren Nos. CA2013-01-005 and CA2013-02-012, 2013-Ohio-3996, ¶ 63.

{¶ 45} It is undisputed that Wife is an attorney licensed in both Ohio and Indiana who, at the time of the final hearing held on May 5, 2017, had an annual income of $76,500 per year with the potential of making $105,000 per year if she obtained certain incentives set forth by her employer. Although Wife testified that she was "[a]bsolutely" working towards meeting those incentives, Husband faults Wife for not yet reaching those incentives claiming Wife "made excuses" for why she had yet to receive any increases to her annual salary. Husband, however, failed to provide any evidence that Wife was not working up to her abilities as a licensed attorney, nor any evidence that she may have been neglecting her duties set forth by her employer.

{¶ 46} Moreover, just as the trial court found, the determination of whether Wife has met her employer's performance goals, thereby entitling her to an increase in her annual salary, is up to her employer, not the trial court. The same is true for this court on appeal. This was confirmed by Wife's testimony, wherein Wife agreed that it was up to her employer, not her, as to whether she was entitled to an increased annual salary. Simply stated, the fact that Wife had yet to obtain an increase in her salary – a decision that is left to the sole discretion of her employer – does not mean Wife is voluntarily underemployed. Husband's claim otherwise lacks merit.

{¶ 47} We also find no merit to Husband's claim that Wife should be found underemployed based on the testimony of Robert Breslin, a vocational expert Husband

retained for the purposes of assessing Wife's earning potential based on her age, education, prior work history, and acquired skills as an attorney employed in the greater Cincinnati area. According to Breslin, based on her fourteen years of experience as an attorney, Wife had a reasonable earning capability of $135,305 per year. Yet, as the record reveals, Breslin based his opinion on public statistical data of attorneys employed in the greater Cincinnati area, for which there is no valid data for earnings of attorneys based on practice area or specialty, such as creditor's rights. Breslin also testified that he did not take into consideration the time it might take for an attorney to obtain employment or the employment rates, nor was Breslin aware of the number of job openings for attorneys within the geographical area from which his data was derived.

**{¶ 48}** Despite this, Husband claims Wife is underemployed because she was earning approximately $60,000 less than what Breslin opined was a reasonable estimate of her earning capability. However, as this court has stated previously, "the trial court is free to accept or reject the opinion of a vocational expert witness who testifies to [a husband or wife's] earning capacity." *Sheehy v. Sheehy*, 12th Dist. Clermont No. CA2010-01-007, 2010-Ohio-2967, ¶ 16. This is particularly true here considering Breslin never testified that Wife was underemployed, instead testifying, "I don't know if I would say she was underemployed," only that Wife was earning less than what he believed was Wife's earning capability. Explaining further, when specifically asked on cross-examination if Wife was underemployed, Breslin testified, "No. As I said, I… what I'd said was that her earnings were less than... they're below average." Even though working as an attorney since graduating law school in 2002, it is undisputed that Wife has never earned an annual salary of more than $99,000 per year

**{¶ 49}** We agree with the trial court that Wife made bona fide good faith efforts to

obtain employment at a higher rate of pay than her then annual salary of $76,500 per year. Considering the current job market for attorneys in the greater Cincinnati area with Wife's skill set as an attorney specializing in creditor's rights, the fact that Wife was unsuccessful in her efforts to secure a higher paying position does not render her voluntarily underemployed. As Wife testified, "[i]f there was [employment available at a higher annual salary], I would * * * most certainly apply for it, but I am pretty certain there isn't anything out there." Based on the record properly before this court, we agree with the trial court in its assessment that Wife "has found the best position possible," a job we note allowed Wife to have some flexibility in her work schedule given the fact that her office was located close to the marital residence and the children's school, thereby providing Wife with her more desired work/life balance and the opportunity to volunteer at the children's school during her lunch break.

{¶ 50} In reaching this decision, we note that while Husband is now employed at an annual salary of $95,000 per year (with the potential for an additional $6,100 incentive bonus), Wife does not claim that Husband is underemployed merely because he had previously been employed at an annual salary of $120,000 per year. As the trial court found, and with which we agree, "the fact that a person's reemployment at a lower salary than a prior job or even at less than the average for a geographical area does not mean that the person is voluntarily underemployed." Therefore, finding no error in the trial court's decision denying Husband's request to impute additional income to Wife in considering its award of spousal support, Husband's argument to the contrary lacks merit.

**Imputed Income to Husband**

{¶ 51} Husband next argues the trial court erred by imputing an additional $31,482 in income to him from the parties' rental properties. We disagree.

- 22 -

{¶ 52} As noted above, in determining an award of spousal support, the trial court must determine both parties' annual income. *Marron*, 2014-Ohio-2121 at ¶ 44. In making such a determination, the trial court "may impute income to a party who is voluntarily unemployed, voluntarily underemployed, or otherwise not working up to his or her full earning potential." *Moore*, 2007-Ohio-4355 at ¶ 66. The decision to impute income for purposes of spousal support is within the discretion of the trial court and shall not be overruled absent an abuse of that discretion. *Corwin*, 2013-Ohio-3996 at ¶ 63.

{¶ 53} Husband claims the trial court erred by imputing an additional $31,482 in income to him from the rental properties because the "rental properties did not actually earn income[.]" In support of this claim, Husband relies heavily on his own testimony, and that of the Schedule E submitted as part of the parties' 2015 jointly filed tax return, wherein he claimed all rental revenue he received from the rental properties went towards paying expenses to maintain the properties, including taxes and insurance. The trial court, however, found the total rental income listed on the Schedule E had been grossly understated based on number of fair rental days reported. For instance, as it relates to the house located at 8413 Reading Road rented at $600 per month, although claiming that property had been rented for 300 fair rental days (10 months) on the Schedule E, thus generating $6,000 in rental income, no income was reported. The same is true regarding the warehouse on that same property, which Husband reported as being rented for a full 365 fair rental days, yet no income was reported. This comports with Wife's testimony that Husband routinely told her not to worry about money since "we have the rentals," "[w]e have money coming from there. We're fine, don't worry," as well as testimony and evidence indicating the rental properties generated income averaging $5,000 to $6,000 a month.

{¶ 54} The trial court also found Husband's testimony that he had no records as to

the rental properties rental history, payment history, or expenses was not credible based on his otherwise "meticulous recordkeeping on virtually every other aspect of the parties' lives such as the amounts spent on marital debts." Explaining further, the trial court noted that, "[b]ased upon the demeanor and testimony of [Husband] in detail about so many things, it is simply incredible that he has no records on the rental properties showing the dates of occupancy, rental receipts and expenditures." Therefore, due to Husband's failure to maintain or provide documentation regarding the rental properties as ordered, the trial court determined that it "must impute the rental income and expenses from exhibits and testimony admitted as evidence in this case." This evidence, as the trial court found, provided for an annual gross rental income of $58,000, which, after subtracting what the trial court found to be the normal and expected expenses of $19,318, constituted $38,682 in rental income that should be imputed to Husband. We find no error in the trial court's decision. We also find no error in the trial court's decision later reducing the amount of imputed income to Husband to $31,482 based on Husband's testimony that he was now living in one of the rental properties that had previously been rented at $600 per month ($7,200 annually).

{¶ 55} In reaching this decision, we reject Husband's claim that the trial court should have concluded the rental properties did not actually earn any income based on a letter from an accountant, Robert L. Sicking, Jr., wherein Sicking stated that he had reviewed the parties' joint income tax returns from 1996 to 2015 and believed the expenses listed for the rental properties during those years appeared to be normal and reasonable, thereby establishing no income from the rental properties for those tax years.[10] As this court has

_____

10. Although not properly raised as a separate assignment of error, *see* App.R. 16(A)(7), Husband alleges the trial court erred by prohibiting Sicking from testifying regarding the rental properties' rental income and expenses through the use of the parties' joint tax returns. Contrary to Husband's claim otherwise, the record indicates Husband never disclosed Sicking as a witness prior to the trial court's discovery deadline.

- 24 -

stated previously, although addressing issues regarding a party's child support obligation, "[a] trial court is not required to 'blindly accept all of the expenses appellant deducted in previous [tax] returns as ordinary and necessary expenses incurred in generating gross receipts.'" (Brackets sic.) *Flege v. Flege*, 12th Dist. Butler No. CA2001-09-225, 2002-Ohio-6105, ¶ 20, quoting *Cutter v. Cutter*, 12th Dist. Butler No. CA93-05-091, 1994 Ohio App. LEXIS 325, *6 (Jan. 31, 1994); *Dressler v. Dressler*, 12th Dist. Warren No. CA2003-05-062, 2004-Ohio-2072, ¶ 15 (a trial court is not required to deduct a party's losses from his income simply because they were claimed on his federal tax returns). Therefore, finding no error in the trial court's decision to impute an additional $31,482 in income to Husband from the parties' rental properties in considering its award of spousal support to Wife, Husband's argument to the contrary lacks merit.

**Spousal Support Award to Wife**

{¶ 56} Husband argues the trial court erred by awarding Wife with $600 in monthly spousal support because it failed to consider all statutory factors listed in R.C. 3105.18(C)(1). We disagree. Contrary to Husband's claim otherwise, as specifically stated on pages 23 and 24 of the trial court's April 28, 2017 decision, the trial court did consider the fact that Wife was retaining the marital residence, that both parties have "significant pension accounts," that "[Wife's] college education including law school was paid from marital funds which were primarily from [Husband's] salary and the rental income," and that Wife was then 44 years old whereas Husband was 53 years old, among other factors. Again, as noted above, a reviewing court will presume each factor was considered, absent evidence to the contrary. *Casper*, 2013-Ohio-4329 at ¶ 42. Husband has provided no such

Regardless, even if Sicking was properly disclosed, after a full and thorough review of the record, we find any error the trial court may have made by prohibiting Sicking from testifying is, at best, harmless given the trial court's admission of the letter authored by Sicking outlining his findings regarding the parties' joint tax returns as it relates to the rental properties' rental income and expenses at issue.

evidence, thereby rendering no merit to his claim otherwise.

{¶ 57} We also find no merit to Husband's claim that awarding Wife with $600 in monthly spousal support was "grossly inequitable and unreasonable" when considering the duration of their marriage and the parties' individual incomes. As the trial court found, the parties maintained an upper middle-class standard of living during the marriage, thus necessitating some type of spousal support award since Husband received nearly $80,000 more than Wife after the division of assets and deduction of their liabilities. The record further indicates that Husband has a net worth of over $1,000,000, which is almost $400,000 more than Wife. Therefore, when considering the record properly before this court, we find no error in the trial court's decision to award Wife with $600 in monthly spousal support. Accordingly, having found no merit to any of the claims Husband raised herein, Husband's second assignment of error is overruled.

{¶ 58} Husband's Assignment of Error No. 3:

{¶ 59} THE TRIAL COURT ERRED BY INCORRECTLY CALCULATING HUSBAND'S CHILD SUPPORT OBLIGATION.

{¶ 60} In his third assignment of error, Husband argues the trial court erred by calculating his monthly child support obligation. In support, Husband again argues the trial court erred by imputing income to him without also imputing income to Wife. As discussed more fully above, we find no merit to Husband's claims. However, we do find merit to Husband's claim that the trial court erred by failing to deduct Husband's annual spousal support obligation from his income on the child support computation worksheet, while also failing to include Wife's annual spousal support award as part of her income on that same child support computation worksheet. "Pursuant to R.C. 3119.02, the trial court should have subtracted the spousal support award from [Husband's] income when calculating his child

support obligation. Likewise, the spousal support award should have been included in the calculation of [Wife's] gross income, pursuant to R.C. 3119.01(C)(7)." *Worley v. Worley*, 5th Dist. Worley No. 06-CA-63, 2007-Ohio-252, ¶ 26. Finding this matter must be reversed and remanded to the trial court for a redetermination of Husband's child support obligation, we find moot Husband's final argument that the trial court erred by utilizing an "uncapped" child support computation worksheet in determining the amount of child support to be awarded. A redetermination of Husband's child support obligation will necessarily resolve this issue. Husband's third assignment of error is therefore affirmed in part, reversed in part, and this matter is remanded to the trial court for a redetermination of Husband's child support obligation.

{¶ 61} Husband's Assignment of Error No. 4:

{¶ 62} THE TRIAL COURT ERRED BY ORDERING HUSBAND TO CONTRIBUTE TOWARDS WIFE'S ATTORNEY FEES.

{¶ 63} In his fourth assignment of error, Husband argues the trial court erred by ordering him to pay $10,000 towards Wife's attorney fees. We disagree.

{¶ 64} Pursuant to R.C. 3105.73(A), in an action for divorce, "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." The statute further provides that, in determining whether an award of fees is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."

{¶ 65} It is well-established that an award of attorney fees is within the sound discretion of the trial court. *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 62. Therefore, a trial court's decision to award attorney

fees will be reversed only if it amounts to an abuse of discretion. *Reynolds-Cornett v. Reynolds*, 12th Dist. Butler No. CA2013-09-175, 2014-Ohio-2893, ¶ 28, citing *Foppe v. Foppe*, 12th Dist. Warren No. CA2010-06-056, 2011-Ohio-49, ¶ 34. Again, an abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *In re B.K.*, 2011-Ohio-4470 at ¶ 12, citing *Blakemore*, 5 Ohio St.3d at 219.

**{¶ 66}** The trial court did not err by ordering Husband to pay $10,000 towards Wife's attorney fees. As noted above, while the trial court went into great detail further explaining its decision regarding its award of attorney fees, suffice it to say we find no error in the trial court's decision finding such an award was appropriate considering Husband "fail[ed] to comply with discovery requests, filed improper discovery requests and filed numerous repetitive or unnecessary motions that caused [Wife] to incur an extraordinary amount of attorney fees in this case." This also includes, as the trial court found, "numerous motions that were frivolous such as a motion to limit the guardian ad litem's activities in the case and repeated motions to reconsider or to modify temporary orders when he had been informed that the final determination of those matters would be made at the final hearing."

**{¶ 67}** Although Husband appeared pro se during a majority of these proceedings, we find that to be no excuse for Husband's actions. That is because individuals who appear "pro se are held to the same standard as litigants who are represented by counsel." *Jones v. Nichols*, 12th Dist. Warren No. CA2012-02-009, 2012-Ohio-4344, ¶ 23, citing *State ex rel. Leon v. Cuyahoga Cty. Court of Common Pleas*, 123 Ohio St.3d 124, 2009-Ohio-4688, ¶ 1. The same is true regarding Husband's demeanor and unnecessary hostility towards Wife, Wife's trial counsel, and the trial court and its staff. Therefore, finding no error in the trial court's decision ordering Husband to pay $10,000 towards Wife's attorney fees, Husband's fourth assignment of error is overruled.

**{¶ 68}** Wife's Cross-Assignment of Error:

**{¶ 69}** THE TRIAL COURT ERRED IN FAILING TO AWARD WIFE AN EQUITABLE SHARE OF THE CURRENT VALUE OF THE RENTAL PROPERTIES.

**{¶ 70}** In her single cross-assignment of error, Wife argues the trial court erred by failing to award her with an equitable share of the current value of the rental properties. We disagree.

### Rental Properties' Fair Market Value

**{¶ 71}** Wife initially argues the trial court erred by finding the "retro appraisal methodology" used by Husband's expert witness, Robert Binger, "appropriate for the appraisal industry and for purposes of establishing fair market values at the time near the date of the marriage in 1996, October or November 1996." Wife instead argues that the trial court should have based its decision on the testimony from her expert witness, Martin Rueve. Wife's argument is essentially that her expert witness was more credible than that of Husband's expert witness. We disagree.

**{¶ 72}** As this court has stated previously, as the trier of fact, the trial court was in the best position to judge the credibility of her expert's testimony regarding the fair market value of the rental properties, as well as the processes used by the parties' expert witnesses in reaching the conclusions that they did. *McCarty v. McCarty*, 12th Dist. Warren Nos. CA2016-07-055 and CA2016-07-056, 2017-Ohio-5852, ¶ 46. Therefore, while the record contains contradictory evidence regarding the rental properties' true fair market value, we find no abuse of discretion in the trial court's decision to utilizing the figures espoused by Husband's expert rather than that of Wife's expert. In so holding, we note that Binger himself testified that "it's not unusual for [him] to do this type of work" and that it was "no different than the way we would do it today." Binger also testified that the purchase of the

rental properties should not be considered an arm's length transaction since the properties were being foreclosed upon or otherwise represented a "distressed situation." The trial court, as the trier of fact, found this testimony credible. Wife's argument to the contrary lacks merit.

**Equitable Distribution of Property**

{¶ 73} Wife next argues the trial court erred by failing to award her with her equitable share of the rental properties, a figure she calculates to be nearly $100,000. Based on the parties' stipulated partial property settlement, Husband was to receive all of the rental properties as part of the trial court's decision regarding the distribution of property, which the trial court determined had a fair market value as of March 1, 2016 of $324,000. The trial court also determined, and Wife does not dispute, that the mortgages on the rental properties were paid from the rental proceeds deposited into the parties' joint marital account, not from either parties' annual salaries earned from their respective employers.

{¶ 74} Although not explicit, the record is clear that the trial court found an equal division of marital property would be inequitable, a finding that is permitted under R.C. 3105.171(C)(1). Therefore, even assuming Wife was correct in her assertion that a portion of the rental properties should be considered marital property, the trial court's distribution of said property was based on what it considered to be "the manner the court determines equitable." "A trial court has broad discretion in determining the equitable division of property in a divorce proceeding." *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54.

{¶ 75} In this case, the trial court fashioned what it determined to be an equitable division of property in this highly contentious divorce proceeding after hearing four days of testimony and reviewing documentary evidence totaling thousands of pages. After a full

and thorough review of the record, we find no abuse of that discretion. Therefore, finding no error in the trial court's decision, Wife's claim that the trial court erred by failing to award her with her equitable share of the rental properties lacks merit. Accordingly, having found no merit to any of the arguments Wife raised herein, Wife's cross-assignment of error is overruled.

{¶ 76} Judgment affirmed in part, reversed in part, and remanded to the trial court for a redetermination of Husband's child support obligation.

HENDRICKSON and M. POWELL, JJ., concur.