[Cite as *Grover v. Dourson*, 2019-Ohio-2495.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| NEERU GROVER, | : | CASE NO. CA2018-07-007 |
| Appellee, | : | O P I N I O N<br>6/24/2019 |
| | : | |
| - vs - | : | |
| | : | |
| STEPHEN DOURSON, | : | |
| Appellant. | : | |


APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 15-DR-6532


Rogers & Greenberg, LLP, L. Anthony Lush, 40 North Main Street, Suite 2160, Dayton, Ohio 45423 for appellee

Kirkland & Sommers Co., LPA, Craig M. Sams, 10532 Success Lane, Dayton, Ohio 45458 for appellant


**M. POWELL, J.**

{¶ 1} Appellant, Stephen E. Dourson ("Father"), appeals from the decision of the Preble County Court of Common Pleas, Domestic Relations Division, designating appellee, Neeru Grover ("Mother"), residential parent and sole legal custodian of the parties' minor children, and awarding attorney fees to Mother. For the reasons outlined below, we affirm

in part and reverse in part.

{¶ 2} Father and Mother were married in Ludhiana, Punjab, India on October 25, 2007. At the time of the marriage, Father was 53 years old and Mother was 33 years old. After marrying, Mother moved to the United States and lived with Father at his home in Gratis, Ohio. The couple have two children born issue of the marriage, D.D. and E.D.

{¶ 3} During the marriage, Father worked as an engineer with a degree in mechanical engineering and a master's degree in manufacturing management. Mother worked part-time in cosmetology, but primarily took care of the children.

{¶ 4} Disagreements arose between the parties leading to Mother, and then Father, filing for divorce in early 2015. The parties' competing complaints were subsequently consolidated by the trial court and a guardian ad litem ("GAL") was appointed for D.D. and E.D.

{¶ 5} Mother and Father submitted a proposed decree of divorce wherein the parties stipulated to many of the decree's terms. However, Father contested several of the decree's provisions, including the allocation of parental rights and responsibilities; the proposed parenting time schedule; restrictions on the children's international travel; designation of the children as father's life insurance policies' beneficiaries; and responsibility for mother's attorney fees. Similarly, Mother disagreed with the parenting schedule and the limitations imposed on the children's international travel.

{¶ 6} A seven-day hearing was held regarding the contested provisions. Because Mother maintains a limited understanding of the English language, an accredited Hindi interpreter assisted with Mother's participation in the proceedings. Due to the interpreter's schedule, the seven-day hearing took nearly ten months to complete.

{¶ 7} In July 2017, the magistrate issued a decision. In his decision, the magistrate designated Mother the residential parent and sole legal custodian of D.D. and E.D. He

further found that Father would have parenting time pursuant to the court's standard guidelines, with the exception of certain holidays observed by Mother and a deviation during the children's summer vacation and spring break. With regard to the children's international travel, the magistrate indicated that unless Mother and Father agreed otherwise, the children's passports would be held by the GAL, and would not be released to either of the parties without consent of both Mother and Father or an order of the court.

{¶ 8} In light of Father's age, the magistrate further ordered Father to designate the children the beneficiaries of at least $250,000 of life insurance benefits on Father's life, during the pendency of father's child support obligation. Alternatively, the magistrate indicated Father could maintain his trust as the beneficiary of the policies, as long as certain provisions were in place to provide for the children.

{¶ 9} The magistrate also awarded attorney's fees to Mother, which he apportioned according to the respective incomes of Mother and Father. Initially, the magistrate ordered Father to pay 74% of Mother's attorney fees in the amount of $44,678.24.

{¶ 10} Father filed objections to the magistrate's decision. Ultimately, with an exception not relevant to the instant appeal, the trial court adopted the magistrate's decision.

{¶ 11} Thereafter, Mother filed a motion for interim, additional and ongoing attorney fees, requesting additional attorney fees for services provided subsequent to the seven-day hearing before the magistrate. The trial court found Mother's motion to be well-taken. The trial court, using the same formula, awarded Mother additional attorney fees in the amount of $17,332.65, for a total fee award of $62,010.89. Father now appeals, raising five assignments of error.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO ADOPT

A SHARED PARENTING PLAN.

{¶ 14} Father contends the trial court abused its discretion when it refused to adopt a shared parenting plan, and instead designated Mother the residential parent and sole legal custodian. Specifically, Father claims the trial court's determination with regard to shared parenting is unsupported by the evidence presented at the hearing.

{¶ 15} As an initial note, "the power of the trial court to exercise discretion is peculiarly important in proceedings involving the custody and welfare of children." *Kenney v. Kenney*, 12th Dist. Warren No. CA2003-07-078, 2004-Ohio-3912, ¶ 6. "The discretion a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned." *Id.*; *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Therefore, an appellate court's standard of review in custody matters is abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). An abuse of discretion is more than an error of law or judgment; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} R.C. 3109.04(B)(1) states that a trial court must consider a child's best interests when allocating parental rights and responsibilities. *See In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 25. In considering a child's best interests, the trial court must consider the factors set forth in R.C. 3109.04(F)(1), which include the following: the wishes of the parents; the child's wishes expressed to the court; the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school, and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate visitation; whether one parent has denied the other parenting time; whether either parent has failed to make all child support payments; and

- 4 -

whether either parent has established or is planning to establish a residence outside of Ohio.

{¶ 17} When determining whether shared parenting is in the best interest of the children, the trial court must consider the factors set forth in R.C. 3109.04(F)(1), as well as the ability of the parents to cooperate and make decisions jointly; the ability of each parent to encourage love, affection, and contact with the other parent; any history of, or potential for, child abuse, domestic violence, or parental kidnapping by either parent; the geographic proximity of the parents to each other; and the recommendation of the GAL. R.C. 3109.04(F)(2). "While no factor in R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting." *Earley v. Earley*, 12th Dist. No. CA2012-01-001, 2012-Ohio-4772, ¶ 26.

{¶ 18} In the instant case, Father argues the trial court erred by failing to impose shared parenting because the evidence presented demonstrates shared parenting would be successful and, in the children's, best interest.

{¶ 19} In rejecting Father's shared parenting plan and designating Mother the legal custodian and residential parent of the children, the trial court considered each of the relevant best interest factors in light of the evidence presented at trial. In his decision, the magistrate placed considerable weight on the testimony and reports of the GAL.

{¶ 20} The trial court found the GAL spent considerable time investigating the circumstances of the case and made a thorough investigation. The GAL's investigation included meeting with the children, Mother, and Father, and interviewing personnel from D.D.'s school, Father's family members, and the children's pediatrician. The GAL memorialized her observations and recommendation into three reports. Ultimately, she recommended that shared parenting was not appropriate in this case, and that she believed custody should be with Mother. The GAL indicated the "real barrier" to shared parenting

was the dissimilar parenting styles of Mother and Father, and their inability to jointly make decisions without difficulty.

{¶ 21} The GAL then described specific concerns she had with regard to shared parenting. Specifically, the GAL noted that Father is very regimented and controlling, including having documented the children's weight and Mother's breast milk production when the children were infants, posting house rules for the children at ages one and three, creating a menu for the children, and challenging decisions made by their pediatrician and school personnel. The GAL also expressed concerns regarding the location of Father's home. While the children were comfortable at his home, it was relatively isolated and approximately thirty minutes from Mother's home and D.D.'s school. In light of the commute, the GAL believed the travel time necessary for shared parenting would create additional stress for the young children. She further noted that some of Father's family members believed Mother should have sole custody of the children.

{¶ 22} Although the GAL did not recommend shared parenting, she reiterated through her testimony and reports that Father has much to offer the children and that he is a good parent to the children. As such, the GAL recommended the children be allowed a liberal amount of time with him. Despite her approval of Father, the GAL believed the children were more bonded and comfortable with Mother and had more opportunities for socialization while with her. She further indicated Mother has a better feel for what is best for the children, and that as the sole custodian, she would expect Mother to be flexible with parenting time and encourage Father's relationship with the children.

{¶ 23} Father disputed much of the GAL's testimony and disagreed that shared parenting was not in the best interest for the children. Father feared that without shared parenting, his input would be marginalized and Mother would have absolute control and complete decision making authority for the children. Primarily, Father indicated he was

concerned about his continued involvement in decisions relating to the children's healthcare and schooling and was not confident that Mother would involve or consult him without a court order.

**{¶ 24}** Father submitted, and the trial court reviewed, over one hundred pages of documentation in response to the GAL's initial report. Father also testified to occasions wherein Mother and Father cooperated to make decisions related to the children. However, after reviewing all documentation and observing Father's testimony, the GAL remained of the opinion that shared parenting was not appropriate.

**{¶ 25}** In light of the evidence presented at trial, the trial court found it was in the best interest of the children that Mother be designated their residential parent and sole legal custodian. Specifically, the trial court found that Mother was the more nurturing parent and the children's primary caregiver and that the children were happy and thriving living with Mother and visiting Father every other weekend.

**{¶ 26}** With regard to the parties' ability to cooperate, the magistrate specifically noted:

> In too many instances about which evidence was presented, when the parties disagreed about a parenting decision, one or the other prevailed not by calm, rational persuasion of the other parent but by the exercise of power and leverage. Father forced Mother to keep track of breast milk, feces, and urine, over her objection. When Father demanded that the children be home schooled, at least according to Father, Mother threatened to leave the country with one or both children. When Mother sought medical care for the children to which Father objected, in view of the Court, he bullied the doctor. While they have agreed on certain aspects of parenting, where they have disagreed, they have not been able to resolve those differences in a reasonable manner.

**{¶ 27}** In its decision adopting the magistrate's decision, the trial court agreed, and found that although the record does support Father's claim that there were times when the parties were able to cooperate, "there is also ample evidence to indicate that the parties

- 7 -

would not be able to cooperate jointly to make good decisions." The trial court found that each parent has strengths and weaknesses and the children benefit from interaction with both parents. However, it further found there is ample evidence in the record to support that Mother was the primary caretaker and would be the more nurturing parent.

{¶ 28} The trial court also held the geographic proximity of the parents weighed against adopting Father's shared parenting plan. The trial court found that Mother and Father live in different school districts, and while the distance between their homes is not monumental, it is not insignificant in terms of getting the children to school and activities each day.

{¶ 29} Based upon the evidence adduced at the hearing, there was considerable evidence supporting the trial court's decision that shared parenting was not in the best interest of the children. The record also indicates the trial court properly considered the best interest factors of R.C. 3109.04(F)(1) and 3109.04(F)(2) before designating Mother the residential parent and sole legal custodian. While Father argues the evidence weighed in favor of shared parenting, the record reflects the trial court based its decision on a weighing of all the relevant best interest factors. The trial court acknowledged that the children benefit from time spent with Father, but found their bond, stability, and happiness while with Mother were of greater weight. Moreover, the record reflects the parties' have a general inability to consistently cooperate in a peaceful manner, making shared parenting unworkable in this matter. Thus, although some factors may weigh in favor of shared parenting, that evidence is not so overwhelming as to suggest that the trial court abused its discretion in concluding to the contrary.

{¶ 30} We are also unpersuaded by Father's argument that the trial court abused its discretion by placing significant weight on the testimony of the GAL and Mother, despite the contradictory evidence presented by Father. As a reviewing court, we must keep in mind

that "the trial court is better equipped to examine and weigh the evidence, determine the credibility, attitude and demeanor of witnesses, and make decisions concerning custody." *In re A.B.,* 2010-Ohio-2823 at ¶ 21. In this case, we find the trial court's custody decision is supported by the record, and we decline to second guess the trial court in this matter.

{¶ 31} In light of the foregoing, the trial court did not abuse its discretion by declining to adopt a shared parenting plan and Father's first assignment of error is overruled.

{¶ 32} Assignment of Error No. 2:

{¶ 33} THE TRIAL COURT ABUSED ITS DISCRETION IN ONLY AWARDING DOURSON THE STANDARD ORDER OF PARENTING TIME WITH THE MINOR CHILDREN.

{¶ 34} In his second assignment of error Father argues the trial court abused its discretion by awarding him the standard order of parenting time. Similar to the above, Father claims the trial court's determination is unsupported by the evidence presented at trial.

{¶ 35} Just as with the trial court's decision regarding the award of parental rights and responsibilities, in determining parenting time for a nonresidential parent, the primary concern is the best interest of the children. *Lykins v. Lykins*, 12th Dist. Clermont Nos. CA2017-06-028 and CA2017-06-032, 2018-Ohio-2144, ¶ 30. "In establishing a specific parenting time schedule, a trial court is required to consider the factors set forth in R.C. 3109.051(D)." *Anderson v. Anderson*, 12th Dist. Warren No. CA2009-03-033, 2009-Ohio-5636, ¶ 24. Similar to the best interest factors as listed in R.C. 3109.04(F)(1), these factors include, but are not limited to the following: (1) the children's interaction and interrelationship with their parents, (2) the geographical location and distance between the parents' respective homes, (3) the children and parents' available time, including each parent's employment schedule, (4) the age of the children, (5) the children's adjustment to their

home, (6) the health and safety of the children, (7) the mental and physical health of all the parties, (8) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights, and (9) "any other factor in the best interest of the child[ren]." R.C. 3109.051(D).

{¶ 36} "The trial court has broad discretion in deciding matters regarding the visitation rights of nonresidential parents." *Shafor v. Shafor*, 12th Dist. Warren No. CA2008-01-015, 2009-Ohio-191, ¶ 7. Therefore, while a trial court's decision regarding visitation time must be just, reasonable, and consistent with the best interest of the child, this court will not reverse the trial court's decision absent an abuse of discretion. *Lott v. Naylor*, 12th Dist. Butler No. CA2017-02-029, 2017-Ohio-9267, ¶ 12, citing *Wilson v. Redmond*, 12th Dist. Madison No. CA2003-09-033, 2004-Ohio-3910, ¶ 9. As noted above, an abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore,* 5 Ohio St.3d at 219.

{¶ 37} The trial court granted parenting time to Father pursuant to the court's guidelines for parenting time for non-custodial parents, with the exception of certain holidays observed by Mother and a deviation during the children's summer vacation and spring break. The trial court described Father's parenting time as "an expanded version of the Court's standard order of visitation." However, Father now argues he should have been awarded additional parenting time.

{¶ 38} According to Father, the record supports an expanded parenting time schedule, and does not contain any evidence that such parenting time would not be in the children's best interest. Specifically, Father testified the children need time with him now, in their formative years, in order to establish that he is a parent they recognize and respect. Moreover, Father questioned Mother's ability to discipline the children, as the children have displayed aggressive behavior since the separation, and he also questions the

- 10 -

appropriateness of the children's diets.  Father further expressed concerns regarding the children's day-to-day activities while with Mother, including how much television they watched, and the amount of time spent in daycare.

{¶ 39} Father argues his proposed equal parenting time schedule addresses many of these concerns.  Specifically, because his employer is "family-friendly," Father can vary his schedule to allow more parenting time and require less daycare for the children.  Father supported his proposed parenting time schedule with testimony that successful overnight visits had occurred during the school year, where Father adjusted his work schedule and accommodated the children.  Father therefore concludes such a schedule will allow Father to continue his active role in the children's lives and is in the best interest of the children.

{¶ 40} We find the trial court's decision regarding Father's parenting time was not an abuse of discretion.  Although not explicit in its findings, it is clear the trial court considered the relevant factors set forth in R.C. 3109.051(D), many of which directly overlap with those factors found in R.C. 3109.04(F)(1) regarding the best interests of the children and which were considered by the trial court in allocating parental rights and responsibilities for the children.

{¶ 41} Furthermore, the trial court's decision comports with the GAL's recommendation, which indicated Father should have ample parenting time, but within the parameters of what is best for the children, as determined by Mother.  The trial court heard testimony that the parenting schedule in place gives Father sufficient parenting time and allows the children to go to school, have a stable home that they know, and a social life. Moreover, the GAL indicated she believed there would be opportunity to expand Father's parenting time in the future, should the parties' ability to cooperate improve.  Notably, despite Father's concerns with his parenting time, he testified his relationship with his children has improved since the separation and that he trusts Mother.  As such, while the

record is clear that the children love Father and benefit from spending time with him, the trial court accorded more weight to the benefits the children receive from consistent time with Mother. Such a determination is not unreasonable, arbitrary, or unconscionable, and is adequately supported by the record.

{¶ 42} Finding no error in the trial court's decision, Father's argument that the trial court abused its discretion in awarding him parenting time lacks merit. Accordingly, Father's second assignment of error is overruled.

{¶ 43} Assignment of Error No. 3:

{¶ 44} THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING DOURSON TO MAINTAIN A LIFE INSURANCE [POLICY] FOR THE BENEFIT OF THE MINOR CHILDREN WITH A DEATH BENEFIT OF AT LEAST $250,000.

{¶ 45} In his third assignment of error, Father argues the trial court erred when it ordered him to maintain a life insurance policy for the benefit of the children that exceeds the amount of child support he is required to pay. Specifically, Father contends the trial court erred by requiring a life insurance policy that "awards * * * four times as much life insurance as [Father's] child support obligation would otherwise be."

{¶ 46} Father testified he maintains three life insurance policies on his life. The first is an employer-sponsored term life insurance policy in the amount of one year's salary. At the time of the hearing, Father's salary was $72,000, however, he indicated that number could fluctuate. In addition to the employer-sponsored policy, Father also maintains two private life insurance policies. The first policy is for $250,000, and the second policy is for $500,000. At the time of the hearing, the beneficiary of all the policies was Father's trust. Father agreed to name the children the beneficiaries of the employer-sponsored policy.

{¶ 47} Father indicated the trust was created ten years prior to his marriage to Mother. We note that Father's trust was not introduced into evidence. According to Father,

the trust provides that, aside from small bequests, the assets of the trust are to be held for the benefit of the children. However, because the trust was not introduced into evidence, its exact provisions are unknown.

{¶ 48} Father also testified that he is eligible for social security benefits, and therefore, the children would receive survivor benefits in the event of his death. Father estimated the social security survivors benefit for both children would total $1,918 per month.

{¶ 49} Per the trial court's decision, Father's child support obligation is $1,237.86 per month, for both children. That obligation continues until the children graduate from high school or reach the age of eighteen, whichever occurs later, but in no case past their nineteenth birthday.

{¶ 50} In light of the child support obligation amount and the benefits the children would receive via social security, Father's employer-sponsored policy, and the trust's assets, Father argued the beneficiary of his private policies should remain his trust. The magistrate rejected Father's argument, and explained the risks associated with Father's age and his child support obligation. The magistrate further expressed doubts concerning Father's employer-sponsored policy being effective at the time the children reach age eighteen, as Father will be 74 when the oldest child is eighteen, and may no longer be employed. As such, the magistrate ordered Father to name the children as the beneficiaries of at least $250,000 in life insurance on his life as long as Father has an obligation to pay child support. The magistrate further stated that, in the alternative, the trust could remain the beneficiary of the policies as long as it "provides that upon [Father's] death, the children shall receive all of the income earned from the policies * * * and so much of the principal as the children reasonably need for their education and general welfare or other terms acceptable to Mother[.]" The trial court adopted the magistrate's order.

{¶ 51} We find the trial court abused its discretion in ordering Father to maintain a life insurance policy to secure his total child support obligation. Assuming, arguendo, that securing a child support obligation with a life insurance policy is permitted, "such orders must be structured in a manner that the child will only receive that portion of the insurance proceeds equal to the amount of support the child would have received if the parent remained alive." *Webb v. Webb*, 2d Dist. Montgomery No. 16371, 1997 Ohio App. LEXIS 5968 (Dec. 31, 1997).[1] In the present case, the children would be entitled to amounts greater than what they would receive if Father remained alive. Specifically, when considering the ages of the children, the life insurance policy mandated by the trial court exceeds Father's child support obligation by approximately $50,000. Additionally, while Father's child support obligation may change over time, the life insurance policy amount will not fluctuate or be limited in any manner until his child support obligation concludes. While we acknowledge the importance of the trial court's discretion in proceedings involving the welfare of the children, such a result is unreasonable and unconscionable.

{¶ 52} Moreover, and as noted above, Father is currently eligible for social security retirement, and if he should decease, the children will receive social security survivor benefits of approximately $1,918 per month. This exceeds the current monthly child support order and provides security for Father's child support obligation in the event he deceases before that obligation terminates. As such, any risk of Father's premature death is offset by the social security benefits the children would receive.

{¶ 53} Accordingly, because the trial court abused its discretion in ordering Father to maintain a life insurance policy in an amount greater than his total child support obligation,

---

1. Father did not challenge the trial court's authority to order that he designate the children beneficiaries of his life insurance policies to secure his child support obligation but claimed the trial court abused its discretion in doing so under the circumstances. Prospectively, this issue is moot as R.C. 3119.88(A)(11), effective February 11, 2019, provides that child support terminates administratively upon the obligor's death.

Father's third assignment of error is sustained.

{¶ 54} Assignment of Error No. 4:

{¶ 55} THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ORDER SUFFICIENT PROTECTION AGAINST ABDUCTION OF THE CHILDREN.

{¶ 56} In Father's fourth assignment of error, he maintains the trial court failed to order sufficient protections to minimize the risk of abduction of the children and maximize the potential of their return if an abduction occurred.

{¶ 57} Father's concerns regarding potential abduction of the children stem from a statement Mother made during an argument about the children's education. The record indicates that at one point, the parties fundamentally disagreed regarding the method of educating their children. Specifically, Father believed the children would benefit from homeschooling, taught by Mother, while Mother wanted to enroll the children in formal schooling. According to Father, as a result of their disagreement, Mother threatened to take one or both of the children to India and to never return. The GAL testified, and included in her report, that she believed Mother's statement was made out of emotion and frustration rather than actual intent to take the children. Despite those beliefs, the GAL recommended some restrictions be implemented to prevent international travel without both parents' consent.

{¶ 58} With regard to the potential restrictions, Father testified that he was uncomfortable with the GAL holding the passports. Specifically, Father expressed concern that the GAL had "not properly and adequately taken the time and effort to understand and to recognize and to acknowledge [Father's] side of the case." Further, Father believed the GAL dismissed the threat of abduction, although Mother has very strong ties to India.

{¶ 59} Notwithstanding Father's concerns, the trial court ordered the passports be held by the GAL unless Mother and Father could agree otherwise. In rejecting Father's

proposition, the magistrate first noted that if Mother actually made the threat, it was borne out of frustration and not serious. The magistrate went on to state that although "there is nothing in the record to suggest that [the GAL] did not give the case adequate study * * * the amount of time she spent on the case has nothing to do with her reliability and integrity in holding the children's passports."

{¶ 60} We find the trial court did not abuse its discretion in ordering the passports be held by the GAL unless Mother and Father agreed otherwise. Notably, the magistrate found that Mother did not seriously threaten to take the children to India. The trial court observed the witnesses and parties firsthand, and therefore, was in the best position to construe the veracity of Mother's statement. As such, we presume the trial court's finding was correct. *Kenney*, 2004-Ohio-3912 at ¶ 7. Thus, although Father argues on appeal that additional protections are necessary to prevent abduction of the children, including designating the United States as the children's Country of Habitual Residence and requiring the posting of a ne exeat bond, the record does not reflect that placing the children's passports with the GAL is inadequate protection. Given the magistrate's disbelief that Mother intended to take the children to India, and that Mother has since integrated herself, and the children, into the community, potential abduction appears unlikely. Under these circumstances, we find that placing the children's passports with the GAL is a reasonable measure to limit the children's international travel, and therefore, overrule Father's fourth assignment of error.

{¶ 61} Assignment of Error No. 5:

{¶ 62} THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING GROVER ATTORNEY FEES IN THE AMOUNT OF $62,010.89.

{¶ 63} Father argues the trial court abused its discretion when it awarded Mother inequitable attorney fees.

{¶ 64} The decision to award attorney fees in a divorce action lies within the trial

- 16 -

court's sound discretion, and the court's decision will be reversed only if it amounts to an abuse of discretion, i.e., is arbitrary, unconscionable, or unreasonable. *Hampton v. Hampton*, 12th Dist. Clermont No. CA2007-03-033, 2008-Ohio-868, ¶ 68-70.

{¶ 65} In this case, the trial court awarded Mother attorney fees amounting to $62,010.89, which is 74% of her total fees. The amount was based upon the parties' relative incomes and the trial court apportioned the fees accordingly. It is undisputed that Mother has not earned income greater than $7,000 since entering the United States, and even with an imputed income equivalent to minimum wage, her monthly income is $3,595. By contrast, Father's annual income is over $92,000 and he has no debt aside from ongoing expenses.

{¶ 66} On appeal, Father first argues the trial court abused its discretion because no fee agreement existed between Mother and her attorney, and Father cannot be held responsible for fees Mother has no obligation to pay. However, "in the absence of an express contract, an attorney can recover the reasonable value of services rendered on the basis of quantum meruit." *Lillie & Holderman v. Dimora*, 8th Dist. Cuyahoga No. 99271, 2013-Ohio-3431, ¶ 6, citing *Baer v. Woodruff*, 111 Ohio App. 3d 617, 620 (10th Dist.1996). Furthermore, Mother testified that she was aware of her attorney's hourly rate but could not afford to pay him for his services. She then reiterated that her attorney should be paid for representing her. Accordingly, the record reflects that Mother was aware she was incurring attorney fees. As such, regardless of whether the obligation arose under a theory of oral contract or quantum meruit, Mother had an obligation to pay her reasonable attorney fees.

{¶ 67} The trial court found that the fee award, although the largest the court had seen in a divorce case, was reasonable in this extraordinarily complicated and lengthy case. In making such a finding, the court relied on testimony from Ohio attorney, Thomas Schiff, who testified as to the reasonableness of the fees, and concluded that based upon the

circumstances, the fees were reasonable. As noted by the trial court, Schiff's testimony as to the reasonableness of the fees went uncontroverted and unchallenged by Father. In light of the trial court's finding that the attorney's fees were reasonable, we find Mother has an obligation to pay them.

{¶ 68} Father next argues that the interim attorney fee award is improper because the magistrate failed to consider Father's post-divorce income and his inability to pay such a large award. At the hearing regarding the additional attorney fee award, Father testified as to his assets, current income, and alleged inability to pay the fee award requested. After due consideration of the evidence, the magistrate found that neither Mother's need for financial assistance nor the parties' incomes had changed. The magistrate acknowledged the significance of the total award but noted that Father had been on notice of his obligation to pay the original award of $44,678.24 for nearly one year. As such, it is evident from the record that the magistrate considered Father's testimony regarding his income and inability to pay prior to ordering the additional apportioned fee award to Mother.

{¶ 69} We also reject Father's argument that Mother is prevented from an attorney fee award under R.C. 3105.73 because Father did not engage in any misconduct. According to R.C. 3105.73(A), "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." Accordingly, while the conduct of the parties is a factor the court may consider under R.C. 3105.73, Father's lack of misconduct does not preclude Mother from obtaining a fee award if the trial court finds the award is equitable. Moreover, the record indicates the trial court based the fee award upon the disparate incomes of the parties and Mother's need for financial assistance, not any alleged

- 18 -

misconduct by Father. This was not an abuse of discretion. *See e.g., Grein v. Grein*, 11th Dist. Lake No. 2009-L-145, 2010-Ohio-2681, ¶ 42-45.

{¶ 70} We further reject Father's notion that the trial court improperly considered Father's premarital assets when awarding such a substantial attorney fee award to Mother. According to the record, although there was testimony related to Father's premarital assets, there is no indication the trial court based its award on any factors other than equity and the disparity of income between the parties. Based on the facts and circumstances of this case, the award of attorney fees was not an abuse of discretion.

{¶ 71} Therefore, finding no error in the trial court's decision ordering Father to pay $62,010.89 towards Mother's attorney fees, Father's fifth assignment of error is overruled.

{¶ 72} Accordingly, the trial court's requirement that Father must name the children as the beneficiaries of at least $250,000 in life insurance on his life as long as he has an obligation to pay child support is reversed. In all other respects, the judgment of the trial court is affirmed.

{¶ 73} Judgment affirmed in part and reversed in part.

HENDRICKSON, P.J., and RINGLAND, J., concur.