[Cite as *Wilson v. Pettiford*, 2025-Ohio-4894.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

|  |  |  |
|---|---|---|
| DUSTIN WILSON, | : | CASE NO. CA2025-03-003 |
| Appellee, | : | |
| | : | OPINION AND JUDGMENT ENTRY 10/27/2025 |
| - vs - | : | |
| | : | |
| IESHIA PETTIFORD, | : | |
| Appellant. | : | |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. AD20200361

Dustin Wilson, pro se.

Ieshia Pettiford, pro se.

## O P I N I O N

**M. POWELL, J.**

{¶ 1} Appellant, Ieshia Pettiford ("Mother"), appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, modifying the existing custody arrangement and designating appellee, Dustin Wilson ("Father"), as the residential parent

and legal custodian of the parties' minor child. For the reasons set forth below, the trial court's judgment is affirmed.

## I. Factual and Procedural History

{¶ 2} Mother and Father are the parents of a minor child born June 10, 2019. Mother was initially granted custody of the child in a judgment entry filed October 29, 2020. On September 12, 2024, Father filed a motion for custody seeking modification of the existing custody arrangement. The motion requested that Father be designated as the child's sole residential parent and legal custodian. The juvenile court held a hearing on February 20, 2025, at which Father, Mother, and others testified.

{¶ 3} Father testified that he became the child's primary caregiver beginning in February 2024. At that time, Mother moved in with her mother and allowed the child to remain with Father. The child, who was five years old at the time of the hearing, had been residing primarily with Father for approximately 12 months by the time the hearing was held.

{¶ 4} During this period, the child was enrolled in kindergarten at Miami Trace Local School District. Father testified that the child was doing well academically. Paternal Grandmother corroborated this testimony, stating that the child's MAP test scores had improved since the beginning of the school year and that the child had made behavioral improvements, since residing with Father.

{¶ 5} On September 11, 2024, an incident occurred that became central to Father's custody-modification request. According to Father's testimony, while dropping the child off for a visit with Mother, he became aware that Mother was hallucinating and under the influence of something. Father transported Mother to the hospital following this incident.

{¶ 6} Father further testified that Mother communicated to him via text message

that she was being treated for ingesting methamphetamines, although she claimed the ingestion was accidental, stating she had received a pill from someone for postpartum depression. Mother disputed this account during her testimony, claiming instead that she was treated at the hospital for a miscarriage, not drug ingestion. Mother referenced medical documents during the hearing but declined to request their admission into evidence, preventing the court from reviewing the actual medical records.

{¶ 7} Father also presented evidence about his current living situation and support network. Father testified that he works full time for the City of Columbus, earning $15.50 per hour. His work schedule runs from 5:00 a.m. to 1:00 p.m., Monday through Friday.

{¶ 8} Father has one other minor child, and both children receive care from Paternal Grandmother, who also testified at the hearing. The children board the school bus at Paternal Grandmother's home, and she provides childcare until Father returns from work. Father does not pay for external daycare services for the child.

{¶ 9} While Father has had substance-abuse problems, witnesses testified regarding Father's efforts to address those problems. Paternal Grandmother testified that Father had been doing much better with his substance abuse issues for the past 16 months, regularly attending counseling and Alcoholics Anonymous meetings three times per week, and had "changed his life for himself and his children."

{¶ 10} The evidence demonstrated that the child had developed strong bonds within Father's household. Father's other child has standard visitation every other weekend and midweek with Father. The mother of Father's other child testified that her daughter and the subject child have a good relationship and "spend a lot of time together" and that she also helps provide care for the child when Father attends AA meetings. She further testified that the child is well adjusted.

{¶ 11} Mother appeared pro se at the hearing. She testified that in February 2024, she lived with her mother along with her three children. Mother denied being treated at the hospital for drug use, maintaining her position that the September 2024 hospitalization was related to a miscarriage. Mother testified that she had obtained employment and was earning $15.00 per hour for 40 hours per week and had secured a lease for housing. Mother also testified that she "tr[ies] to be there for my son" and requested that both parties undergo drug testing.

{¶ 12} Regarding visitation, the testimony revealed conflicting accounts. Father testified that Mother initially had regular visits with the child until March or May 2024, when she stopped requesting regular visitation. Mother disputed this account, testifying that Father was preventing her from visiting the child. She also expressed confusion during the hearing, testifying that she believed Father had already been granted custody by the court in February 2024.

{¶ 13} Mother closed her case without requesting admission of any further testimony or evidence despite having referenced medical documents during her testimony that she declined to introduce into evidence.

{¶ 14} At Mother's request, both parties consented to drug testing, with Mother paying for the tests. The results showed that Mother tested negative for controlled substances, while Father tested positive for THC. But Father provided a copy of a valid medical marijuana card to the bailiff. The trial court noted that it did not "rely heavily on the tests, since they were not random drug screens."

{¶ 15} Following the hearing, the trial court issued its decision on February 20, 2025. The court found that there had been a change in circumstances in the life of the minor child and the custodial parent since the last decree. Specifically, the court found that the child had primarily resided with Father since February 2024 and credited Father's

testimony regarding Mother hallucinating and being treated at the hospital on September 11, 2024. The court further found that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. After considering the best interest factors enumerated in R.C. 3109.04(F)(1)(a) through (j), the court granted Father sole legal custody of the child and designated him as the residential parent and legal custodian. The court's order established a detailed parenting time schedule for Mother, terminated Father's child-support obligation and ordered Mother to pay child support.

{¶ 16} Mother appealed.

## II. Analysis

{¶ 17} Mother, appealing pro se, raises a single assignment of error challenging the trial court's decision to modify the prior custody decree and grant Father sole legal custody of their child. Mother argues that the juvenile court abused its discretion and erred by failing to properly evaluate the evidence. She contends that the court ignored evidence she presented and failed to follow proper procedures, arguing that the court "had no evidence, nor did [it] take the time to gather[] evidence." Mother requests that we reverse the trial court's decision and revise both the process and evidence evaluation that led to the custody modification. Father did not file a brief in response to Mother's appeal.

## Standard of Review

{¶ 18} "A trial court has broad discretion in custody proceedings and its decision will not be reversed absent an abuse of discretion." (Citation omitted.) *Earley v. Earley*, 2012-Ohio-4772, ¶ 13 (12th Dist.). "The discretion a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceedings and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody

- 5 -

proceeding cannot be conveyed to a reviewing court by a printed record." (Citations omitted.) *Id.*

{¶ 19} "In reviewing a custody determination, an appellate court must 'review the record to determine whether there is any evidence in support of the prevailing party.'" *Lyle v. Kersey*, 2000 WL 895268, *1 (12th Dist. Jun. 30, 2000), quoting *Ross v. Ross*, 64 Ohio St.2d 203, 206 (1980); *In re J.L.C.*, 2023-Ohio-4081, ¶ 50 (12th Dist.) (quoting the same). "No abuse of discretion will be found provided there is a substantial amount of credible and competent evidence to support the trial court's findings." *Id.*, citing *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23 (1990). "As a reviewing court, we must keep in mind that 'the trial court is better equipped to examine and weigh the evidence, determine the credibility, attitude and demeanor of witnesses, and make decisions concerning custody.'" *Grover v. Dourson*, 2019-Ohio-2495, ¶ 30 (12th Dist.), quoting *In re A.B.*, 2010-Ohio-2823, ¶ 21 (12th Dist.).

**The Law Governing Custody Modification**

{¶ 20} R.C. 3109.04 governs the modification of custody in this case. The statute provides:

> (a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> > (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a). The circumstances described in subsections (i) and (ii) do not apply in this case. Accordingly, the trial court here was permitted to modify custody if it made three findings: (1) that a change in circumstances has occurred; (2) that the modification is in the best interest of the child; and (3) that the advantages of the change of environment outweigh any likely harm from the change. R.C. 3109.04(E)(1)(a); *see also In re J.L.C.*, 2023-Ohio-4081, at ¶ 50.

**The Trial Court's Decision**

{¶ 21} The trial court made all three relevant R.C. 3109.04(E)(1) change-in-custody findings—that a change in circumstances had occurred, that the change was in the child's best interest, and that the advantages of the change outweighed the likely harm. And the court specifically outlined the statutory best-interest factors and made findings of fact related to each of the relevant factors.

{¶ 22} Mother's brief fails to identify specific errors in the trial court's analysis or cite to portions of the record supporting her contentions, as required by App.R. 16(A)(3) and (A)(6). More fundamentally, though, Mother has not demonstrated that the trial court's decision constitutes an abuse of the court's broad discretion. The extensive evidence presented at the hearing, including testimony from multiple witnesses regarding the child's welfare and adjustment, provides competent, credible support for the trial court's decision.

{¶ 23} The trial court identified multiple changes in circumstances that occurred since the October 2020 custody decree. The court found that "there has been a change in circumstances in the life of the minor child and the custodial parent since the last decree." These circumstances included: first, that "the child has primarily resided with Father since February 2024," and second, the September 11, 2024 incident where the court found credible Father's testimony "regarding Mother hallucinating and being treated at the hospital."

{¶ 24} The evidence supports the trial court's finding that the child's living arrangement changed substantially after the 2020 decree. Father testified that he has been the primary caregiver for the child since February 2024, when Mother moved in with her mother and let the child stay with Father. This represents a significant change from the original custody arrangement where Mother was designated the residential parent and legal custodian.

{¶ 25} The trial court credited Father's testimony regarding the September 11, 2024 incident, stating: "The Court believes Father's testimony regarding Mother hallucinating and being treated at the hospital on September 11, 2024." According to Father's testimony, he became aware that Mother was hallucinating and under the influence of something and transported Mother to the hospital. Father further testified that Mother indicated to him via text that she was being treated for ingesting methamphetamines.

{¶ 26} While Mother disputed this testimony, claiming she was treated at the hospital for a miscarriage, not ingesting methamphetamines, the trial court was within its discretion to credit Father's version of events. Significantly, as the court noted, Mother "referenced medical documents in front of her during the hearing, but refused to request their admission [i]nto evidence so the Court could review the documents." A party's refusal

to present available evidence bearing on disputed facts may properly influence a trial court's credibility determinations. *Biestek v. Berryhill*, 587 U.S. 97, 114 (2019) (Gorsuch, J., dissenting) ("The refusal to supply readily available evidentiary support for a conclusion strongly suggests that the conclusion is, well, unsupported."), citing *Interstate Circuit v. United States*, 306 U.S. 208, 226 (1939), and *Clifton v. United States*, 45 U.S. 242, 248 (1846).

{¶ 27} The evidence also showed a change in Mother's exercise of her parental rights. Father testified that while Mother had regular visits with the child until March or May 2024, she thereafter stopped regular visitation. Although Mother disputed this and claimed Father was preventing her from visiting, the trial court was entitled to weigh these competing accounts. *See In re J.L.C.*, 2023-Ohio-4081, at ¶ 51 ("An appellate court must review the evidence bearing in mind that the trial court is better equipped to examine and weigh the evidence and to make decisions about custody." [Citation omitted.]).

{¶ 28} Having found sufficient changes in circumstances and that the harm likely to be caused to the child by a change of environment is outweighed by the advantages of the change of environment, the trial court proceeded to analyze the best-interest factors under R.C. 3109.04(F)(1). These statutory factors include the wishes of the parents; the interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; and the mental and physical health of all persons involved. R.C. 3109.04(F)(1)(a)-(j). The record contains competent, credible evidence supporting the trial court's best interest analysis across multiple statutory factors.

{¶ 29} *Child's adjustment and stability*: Father testified that the child was in kindergarten at Miami Trace Local School District and was doing well. Paternal Grandmother testified that the child's MAP test scores have improved since the beginning

of the year and the child does well at school and has made improvements in his behavior since residing with Father.

{¶ 30} *Mental and physical health*: The evidence showed that Father has addressed his substance-abuse issues. Paternal Grandmother testified that Father had been doing much better with his substance abuse issues for the past 16 months and had been attending counseling and AA meetings 3 times a week and had changed his life for himself and his children.

{¶ 31} *Child's relationships*: The evidence showed the child has developed strong bonds in Father's household, including with his sister and extended family members who provide care and support.

{¶ 32} *Living arrangements*: Father presented evidence of stable employment with the City of Columbus and appropriate childcare arrangements through Paternal Grandmother.

{¶ 33} Mother argues that the trial court "had no evidence, nor did [it] take the time to gather[] evidence" and that "evidence contradicted these claims against Mother." But this argument fails to engage with the substantial evidence actually presented at the February 20, 2025 hearing, including testimony from Father, Paternal Grandmother, and another mother of Father's children, as well as Mother's own testimony. Also, while Mother argues that the court "ignored" evidence favorable to her, the record reflects that Mother had the opportunity to present testimony and evidence but chose not to introduce certain documents that might have supported her position. As the trial court noted, Mother "closed her case without requesting admission of any further testimony or evidence."

### III. Conclusion

{¶ 34} Mother's assignment of error lacks merit. The trial court made the necessary statutory findings, and they are supported by competent, credible evidence. The

assignment of error is overruled, and the trial court's judgment is affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Fayette County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge